## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **J. JEFFERSON CROOK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **EP-14-CV-193-KC** |
| | § | |
| **PEDRO GALAVIZ, and CANUTILLO** | § | |
| **INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| **Defendants**. | § | |

## <u>ORDER</u>

On this day, the Court considered the following motions:  (1) Superintendent Pedro Galaviz's Motion Asserting Qualified and Official Immunity ("Galaviz's Motion"), ECF No. 49; (2) Defendants' 12(b)(6) or in the Alternative Rule 12(c) Motion to Dismiss (the "Motion to Dismiss"), ECF No. 50; (3) Members of the Board of Trustees of Canutillo Independent School District's Rule 12 Motion to Dismiss for Failure to Identify Defendants, Failure to Issue or Serve Process to Individual Defendants, Failure to State a Claim on Which Relief Can be Granted and for Judgment on the Pleadings (the "Board's Motion"), ECF No. 51; (4) Defendants' Supplemental Motion to Dismiss (the "Supplemental Motion to Dismiss"), ECF No. 77; and (5) Plaintiff's Motion for Leave to File Addendum to Fourth Amended Original Complaint, ECF No. 78, in the above-captioned case (the "Case").  For the reasons set forth below, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  The Supplemental Motion to Dismiss is **GRANTED** in its entirety.  The Court **DENIES** all remaining motions as moot.

## I.    BACKGROUND

On May 23, 2014, Plaintiff James J. Crook ("Plaintiff"), a convicted felon and former attorney, filed an employment discrimination lawsuit against the Canutillo Independent School

District ("CISD"), CISD's Superintendent Pedro Galaviz ("Galaviz"), and CISD's Board of Directors (the "Board") (collectively, "Defendants").  *See* Compl. 1-2, ECF No. 1-1; *see also* Pl.'s Fourth Am. Original Compl. 1-2 (the "Operative Complaint"), ECF No. 70.[1]  By the Operative Complaint, Plaintiff contends that Defendants' policy against hiring individuals with felony convictions for classroom teaching positions violates numerous constitutional provisions, including the Equal Protection Clause of the Fourteenth Amendment.  *See* Operative Compl. 2. Many years prior to submitting his employment application to CISD, a jury found Plaintiff guilty of thirteen counts of felony barratry.  *See id.* at 4; Mot. to Dismiss 2.  In the wake of these convictions, the Texas Board of Disciplinary Appeals permanently disbarred Plaintiff from the practice of law in the State of Texas.  *See* Mot. to Dismiss 3.  As discussed in more detail below, this Case represents the second occasion in which Plaintiff has challenged the constitutionality of a local school district's policy not to hire teachers with criminal convictions.  *Compare* Operative Compl. 3-4, *with Crook v. El Paso Indep. Sch. Dist.*, No. EP-07-CV-017-KC (W.D. Tex. July 20, 2007) ("*Crook I*") (denying Plaintiff's equal protection and substantive due process challenges to school district's policy, and further dismissing Plaintiff's Title VII and intentional fraud claims), *aff'd*, 277 F. App'x 477 (5th Cir. 2008), *cert. denied*, 555 U.S. 956 (2008).  Thus, for the second time, this Court addresses each of Plaintiff's contentions.

### A.   Factual Background

Consistent with the evidentiary standard on a motion to dismiss, the Court derives the following facts entirely from the Operative Complaint in this Case.  *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014).  In the spring of 2012, Plaintiff applied for the

---

[1] Since first initiating this Case, Plaintiff has amended his original complaint on six separate occasions.  *See* ECF Nos. 5, 13, 31, 33, 39, 70.  The Court granted all but Plaintiff's latest request to amend, *see* ECF No. 78, which came more than one month after the Court admonished Plaintiff that it would "not entertain any additional motions to amend the complaint absent extraordinary circumstances."  *See* Order 1, ECF No. 69.  Accordingly, the Court cites to the Operative Complaint (which is actually Plaintiff's sixth amended complaint) for Plaintiff's allegations.

position of social studies teacher with CISD. *See* Operative Compl. 3. After not receiving any word for approximately two years, Plaintiff was forced to reapply for computer system. *Id.* at 3-4. Shortly thereafter, Plaintiff contends that Galaviz promised to hire him as a high school economics teacher beginning in the fall of 2014. *Id* the same position in the spring of 2014 because Defendants "willfully erased" his original application from their. at 4. However, Plaintiff later discovered that Galaviz had no intention of hiring him as an economics teacher, and instead had instructed CISD's administrative staff to ignore Plaintiff's application solely due to his criminal convictions for statutory barratry. *See id.* 4-5. In reliance upon these false representations, Plaintiff ceased interviewing for teaching positions with other school districts, which may have resulted in a loss of income. *Id.* at 5.

### B.    Plaintiff's Claims

From this set of facts, Plaintiff contends that he is entitled to relief under numerous provisions of the Constitution, as well as at Texas common law.[2] *Id.* at 2-9. First, as noted above, the core of Plaintiff's case is that Defendants' actions violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 2-7. Second, Plaintiff contends in a responsive pleading, but not in the Operative Complaint, that two separate provisions of the Texas Education Code are unconstitutional. *Compare* Pl.'s Resp. to Defs.' 12(b)(6) or in the Alternative Rule 12(c) Mot. to Dismiss 7-10, 13-17, 22 ("Response"), ECF No. 34, *with* Operative Compl. Third, Plaintiff challenges the constitutionality of the Texas barratry statute. Operative Compl. 4; *see also* Tex. Penal Code Ann. § 38.12.[3] Fourth, Plaintiff argues that the collateral consequences of his

---

[2] While Plaintiff does not divide or otherwise organize his allegations into "claims," the Court liberally construes the Operative Complaint consistent with Plaintiff's status as a pro se litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] In accordance with its obligations under Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), the Court submitted formal notice to the Texas Attorney General on February 4, 2015, that Plaintiff raised challenges to the constitutionality of various state statutes. *See* Order, ECF No. 82. Because the Court concludes that Plaintiff's

convictions violate the Double Jeopardy Clause of the Fifth Amendment.  Operative Compl. 2, 6,

8.  Fifth, Plaintiff also contends that Defendants' hiring policy is tantamount to a bill of attainder,

in violation of Article I, § 10 of the Constitution.  *Id.*  Sixth, Plaintiff asserts that Defendants'

actions prevent him from obtaining gainful employment, and thus constitute cruel and unusual

punishment under the Eighth Amendment.  *Id.*  And seventh, Plaintiff brings a state law claim

against Defendants for promissory estoppel.  *Id.* at 5.

    In addition to monetary damages, Plaintiff seeks a long list of equitable remedies,

including (1) a judicial declaration that individuals with criminal convictions are a suspect class

under the Fourteenth Amendment, (2) an order requiring Defendants to employ Plaintiff as an

economics teacher for the upcoming school year, (3) an injunction "universally sealing all

criminal records from access by the general public nationwide, except for the most egregious

offenses," and (4) an order enjoining all employers from inquiring into an applicant's criminal

history.  *Id.* at 8-9.

    Defendants filed their Motion to Dismiss on November 4, 2014.  *See* Mot. to Dismiss.

Shortly thereafter, Defendants filed a Supplemental Motion to Dismiss directly addressing

Plaintiff's promissory estoppel claim, which Plaintiff added to the Operative Complaint on

December 3, 2014.  *See* Supplemental Mot. to Dismiss.  Plaintiff filed his global Response to all

of Defendants' arguments on September 26, 2014.[4]

---

challenges are wholly without merit, the Court may, and does, reject those challenges prior to the expiration of the
sixty-day intervention period.  *See* Fed. R. Civ. P. 5.1(c) ("Before the time to intervene expires, the court may reject
the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional.").

[4] The filing date of the Response is *before* the Motion to Dismiss and the Supplemental Motion to Dismiss because
Defendants were required to repeatedly revise and refile their motions to account for the numerous amendments to
Plaintiff's complaint.  Although Plaintiff did not file new responses to Defendants' revised motions, the Court
nonetheless views his Response as a global opposition defending the merits of this lawsuit.

## II.    DISCUSSION

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011).  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  Nevertheless, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.    Plaintiff's Claims Arising Under the Constitution

42 U.S.C. § 1983 provides a private right of action against any person who, under color

of state law, subjects another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983.  Section 1983 also allows a plaintiff to maintain a cause of action against a local government entity when the entity's official policy or custom is the "moving force" behind the alleged constitutional violation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  Nevertheless, "[i]t is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004); *see also Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979) (noting that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere").  As a result, regardless of whether a plaintiff's § 1983 claims are asserted against a state official or a local government entity, they cannot survive a motion to dismiss without facts supporting a plausible constitutional violation in the first instance.  *See, e.g.*, *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors.").

### 1.     Plaintiff's equal protection claim

Defendants make several arguments in support of their contention that Plaintiff's equal protection claim must be dismissed.  First, Defendants argue that Plaintiff has failed to allege sufficient facts to state a plausible violation of the Fourteenth Amendment.  *See* Mot. to Dismiss 8-10.  Second, Defendants contend that Plaintiff's equal protection claim fails because "Plaintiff's recent thirteen count felony conviction for Barratry is, as a matter of law, a rational basis for Defendants' refusal to employ him as a classroom teacher." *Id.* at 10 (collecting cases); *see also id.* at 13 n.47.  Lastly, Defendants assert that Plaintiff has already litigated the

6

constitutionality of a virtually identical school district hiring policy in *Crook I*, and his claims are therefore barred by the doctrine of collateral estoppel. *Id.* at 15-18.

Plaintiff denies that the Operative Complaint is lacking in factual content, and maintains that Defendants cannot automatically disqualify convicted felons from teaching positions without "doing violence to the [Fourteenth] Amendment." *See* Resp. 5. Plaintiff further contends that the collateral estoppel doctrine is inapplicable because this Case concerns numerous constitutional provisions that were not at issue in *Crook I*. *Id.* at 7.

Because the Court credits Defendants' collateral estoppel defense, it does not proceed any further in its analysis. "Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). A party is only precluded from litigating an issue if: "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action."[5] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). "In this circuit, collateral estoppel applies to 'pure questions of law' only when there has been no 'change in controlling legal principles.'" *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) (collecting cases). Similarly, an issue is only "identical" for the purposes of collateral estoppel if "the facts and the legal standard

---

[5] As a fourth element to the collateral estoppel analysis, Courts sometimes consider whether there is any "special circumstance that would render preclusion inappropriate or unfair." *See United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994); *accord Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991). This fourth element, however, "applies only to the use of offensive (non-mutual) collateral estoppel by the plaintiff." *See Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979) (defining offensive collateral estoppel as occurring "when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party"). Because this Case involves only defensive collateral estoppel, the Court does not discuss the equitable prong in its analysis.

used to assess them are the same in both proceedings." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999).

Additionally, unlike the related doctrine of claim preclusion, which requires mutuality of parties, *id.* at 934, a defendant may invoke collateral estoppel even when it was not a party in the earlier proceeding. *Mendoza*, 464 U.S. at 158-59. Instead, it is sufficient that the party *against* whom estoppel applies had a full and fair opportunity to litigate the issue in the earlier case. *See id.* at 159; *see also Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989) ("A preclusion defense, subject to certain conditions, may be invoked by a non-party against a party to the prior suit . . . ."); *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir. 1978) ("[U]nder federal principles a party who has had a full and fair opportunity to litigate an issue decided in a prior suit may be precluded from relitigating that issue in a subsequent action, even though the subsequent adversary was not a party to the prior litigation.").

Before proceeding with its analysis, the Court must determine whether Defendants' preclusion defense is even the proper subject of a motion to dismiss. While the general rule appears to be that "a res judicata contention cannot be brought in a motion to dismiss," *see Test Masters*, 428 F.3d at 570 n.2, the Fifth Circuit has recently held that "there are times when it may be raised on a Rule 12(b)(6) motion." *See Meyers v. Textron, Inc.*, 540 F. App'x 408, 410 (5th Cir. 2013) (citing *Test Masters*, 428 F.3d at 570 n.2).[6] Specifically, the Fifth Circuit "has found that res judicata may be properly raised on a motion to dismiss when 'the facts are admitted or not controverted or are conclusively established.'" *Id.* (quoting *Clifton v. Warnaco, Inc.*, 53 F.3d 1280, 1995 WL 295863, at *6 n.13 (5th Cir. 1995)); *see also Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) ("Dismissal by the court sua sponte on res judicata grounds . . . is permissible in

---

[6] In the Fifth Circuit, the term "res judicata" is often used broadly to refer to both claim preclusion and collateral estoppel. *See, e.g.*, *Shanbaum,* 10 F.3d at 310.

the interest of judicial economy where both actions were brought before the same court."); *Larter & Sons v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952); *accord Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer.").

Applying these standards here, the Court is of the opinion that the facts necessary to resolve Defendants' collateral estoppel defense are both "not controverted [and] conclusively established." *See Meyers*, 540 F. App'x at 410 (citing *Clifton*, 1995 WL 295863, at *6 n.13).[7] Accordingly, in the interests of judicial economy, the Court declines to delay adjudication of Defendants' collateral estoppel defense until the summary judgment stage. *Id.*

Having determined that Defendants properly raised the collateral estoppel defense in their Motion to Dismiss, the Court finds that the defense plainly operates as a bar to Plaintiff's Fourteenth Amendment challenge. First, according to Plaintiff's own factual allegations, the relevant hiring policies of the El Paso Independent School District ("EPISD") and CISD are identical:[8] that is, both school districts have a standing policy not to consider applicants with felony convictions for classroom teaching positions. *Compare* Order at 6, *Crook I*, No. EP-07-

---

[7] Pursuant to Federal Rule of Evidence 201, the Court may, and does, take judicial notice of its own court records because they are both "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot be questioned." *See* Fed. R. Evid. 201(b); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "matters of which a court may take judicial notice" in resolving a Rule 12(b)(6) motion); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts . . . which were matters of public record directly relevant to the issue at hand.").

[8] In *Crook I*, because the Court considered Plaintiff's equal protection challenge on a motion to dismiss, the Court assessed the constitutionality of EPISD's hiring policy based solely on the allegations in Plaintiff's complaint. *See* Order at 2, *Crook I*, No. EP-07-CV-017-KC (W.D. Tex. June 19, 2007), ECF No. 29 (reciting Plaintiff's allegation that "EPISD had a standing policy not to hire anyone as a permanent teacher who had a felony conviction"); *id.* at 3 (summarizing the legal standard on a motion to dismiss). In this Case, Plaintiff's Fourteenth Amendment challenge comes before the Court in the exact same procedural posture. As a result, the Court once again accepts Plaintiff's factual representations as true, including his allegations regarding the sum and substance of CISD's hiring policy. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

CV-017-KC (W.D. Tex. June 19, 2007), ECF No. 29 ("Plaintiff argues that the EPISD's policy denying permanent placement to anyone with a felony conviction, without a case by case evaluation, is per se arbitrary."), *with* Operative Compl. 4 (stating that Defendants "surreptitiously rejected [Plaintiff] from *all* teaching positions with [CISD] due to a criminal record per se"). Because the relevant part of EPISD's hiring policy is alleged to be virtually indistinguishable from that of CISD, both this Case and *Crook I* present the Court with identical Fourteenth Amendment issues.

Additionally, while the constitutionality of this policy under the Equal Protection Clause is a "pure question of law," *Petro-Hunt*, 365 F.3d at 397, Plaintiff has failed to identify "a significant change in the legal climate" that would caution this Court against applying collateral estoppel in this Case. *See E.E.O.C. v. Am. Airlines, Inc.*, 48 F.3d 164, 170 (5th Cir. 1995) (internal quotation marks and citations omitted). Indeed, since *Crook I*, the United States Supreme Court has not overruled its decision in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 (1976), in which it held that the right to public employment is not "[p]er se . . . fundamental." *Id.* at 313; *accord Arceneaux v. Treen*, 671 F.2d 128, 133 (5th Cir. 1982) ("[T]he right to hold public employment is not a recognized fundamental right."). Nor has the Fifth Circuit – or any other circuit for that matter – retreated from its longstanding position that convicted felons are not a recognized suspect or quasi-suspect class under the Equal Protection Clause. *See Hilliard v. Ferguson*, 30 F.3d 649, 652 (5th Cir. 1994); *accord, e.g.*, *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1125 (7th Cir. 1983); *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970). Thus, CISD – just like EPISD before it – must only survive rational basis scrutiny.

10

Turning to the second element in the preclusion analysis, there is no question that Plaintiff "actually litigated" the constitutionality of EPISD's policy in *Crook I*. Indeed, it was the precise object of Plaintiff's Fourteenth Amendment challenge. *See* Order at 9, *Crook I*, No. EP-07-CV-017-KC (W.D. Tex. June 19, 2007) (noting that "Plaintiff challenges the constitutionality of the EPISD's policy which classifies applicants based on their felony record"). After receiving an adverse decision from this Court, Plaintiff continued to vigorously pursue his argument on appeal, first in the Fifth Circuit, *see Crook*, 277 F. App'x at 480, and then subsequently with the United States Supreme Court. *See Crook v. El Paso Indep. Sch. Dist.*, 555 U.S. 956 (2008). Even after the Supreme Court denied Plaintiff's petition for certiorari, Plaintiff filed a second petition with the Supreme Court seeking a "rehearing." *See Crook v. El Paso Indep. Sch. Dist.*, 555 U.S. 1129 (2009). The Supreme Court denied that request on January 12, 2009, effectively ending a litigation that Plaintiff first initiated in August of 2006. *See id.* Thus, the circumstances surrounding *Crook I* conclusively demonstrate that Plaintiff had a "full and fair opportunity to litigate" his equal protection challenge. *See Mendoza*, 464 U.S. at 158-59.

Finally, the third requirement – that the Court's determination of the issue in the prior action was a necessary part of its judgment – is also clearly satisfied in this Case. In *Crook I*, this Court dismissed Plaintiff's equal protection claim on the merits because it found that "EPISD has a legitimate purpose for its policy discriminating against felons when hiring permanent teachers." *See* Order at 9, *Crook I*, No. EP-07-CV-017-KC (W.D. Tex. June 19, 2007). The Fifth Circuit affirmed this Court's decision, holding that "[t]he district court . . . did not err in its application of rational basis scrutiny." *See Crook*, 277 F. App'x at 481. As a result, the Court's finding that EPISD's hiring policy survived rational basis scrutiny was plainly essential to its disposition of Plaintiff's equal protection claim in *Crook I*.

11

While Plaintiff claims that the presence of other constitutional issues makes this Case "factually distinguishable" from *Crook I*, *see* Resp. 7-8, 15, his reasoning rests upon a fundamental misunderstanding of the collateral estoppel doctrine. The important fact is not that this Case purportedly contains "five un-litigated and unresolved issues" not initially before the Court in *Crook I*, *see id.* at 7; rather, it is that this *particular* issue was already litigated and finally resolved against Plaintiff in an earlier lawsuit. The collateral estoppel doctrine requires no more. *See Mendoza*, 464 U.S. at 158. For this reason, the Court concludes that Plaintiff's Fourteenth Amendment Claim is barred as a matter of law.

### 2.     Plaintiff's challenges to the Texas Education Code

In their Motion to Dismiss, Defendants cite two provisions of the Texas Education Code for the proposition that Texas law generally disfavors employing individuals with serious criminal convictions to work in close proximity to school children. *See* Mot. to Dismiss 11 nn. 37-38 (citing Tex. Educ. Code Ann. §§ 21.058 and 22.0834). Seizing on these citations, and attempting to differentiate the instant Case from *Crook I*, Plaintiff contends in his Response that §§ 21.058 and 22.0834 are both unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *See* Resp. 7-10, 13-17, 22.

As an initial matter, the Court observes that it is unclear whether Plaintiff's challenges to these statutes are even properly before the Court. Although Plaintiff alleges in his Response that §§ 21.058 and 22.0834 are unconstitutional, he did not include these new claims in the Operative Complaint, or in any of its five predecessors. Nevertheless, there is some authority in this Circuit suggesting that "[w]hen a *pro se* plaintiff raises a new claim for the first time in response to a motion to dismiss, the district court should construe the new claim as a motion to amend the complaint under [Federal Rule of Civil Procedure 15(a)]." *See King v. Life Sch.*, 809 F. Supp. 2d

12

572, 581 (N.D. Tex. 2011) (collecting cases).  Here, because Plaintiff is *pro se*, the Court

proceeds as if Plaintiff actually raised these challenges in the Operative Complaint.  *See id.*

　　Having closely reviewed the relevant provisions of the Texas Education Code, the Court

finds that both of Plaintiff's constitutional challenges suffer equally from the same defect:  a lack

of standing.  It is well settled that standing is an essential part of Article III's case or controversy

requirement.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).  To satisfy the

constitutional standing requirements, a plaintiff must establish:  "(1) an 'injury in fact' that is (a)

concrete and particularized and (b) actual or imminent; (2) a causal connection between the

injury and the conduct complained of; and (3) the likelihood that a favorable decision will

redress the injury."  *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Because constitutional standing is a

necessary component of a court's subject matter jurisdiction, the court must raise any potential

defect sua sponte.  *Gulf Pub. Co. v. Lee*, 679 F.2d 44, 46 (5th Cir. 1982).

　　With these considerations in mind, the Court concludes that Plaintiff cannot challenge the

constitutionality of §§ 21.058 and 22.0834 because neither statute even applies to Plaintiff, let

alone operated as the cause of his injury.  Section 21.058 provides, in relevant part:

> If a school district or open-enrollment charter school becomes
> aware *that a person employed by the district or school* under a
> probationary, continuing, or term contract under this chapter has
> been convicted of or received deferred adjudication for a felony
> offense, . . . the district or school may: (1) suspend the person
> without pay; (2) provide the person with written notice that the
> person's contract is void as provided by Subsection (c-2); and (3)
> terminate the employment of the person as soon as practicable.

Tex. Educ. Code Ann. § 21.058(c-1) (emphasis added).

　　Similarly, the relevant portion of § 22.0834 provides as follows:

> (o) *A contracting or subcontracting entity* may not permit an
> employee . . . to provide services at a school if the employee has

been convicted of a felony or misdemeanor offense that would prevent a person from being employed under Section 22.085(a).

Tex. Educ. Code Ann. § 22.0834(o) (emphasis added).

Here, it is undisputed that the crux of Plaintiff's lawsuit is that CISD refused to hire him as a classroom teacher. *See* Operative Compl. 3-4. As a result, Plaintiff's injury has absolutely nothing to do with a statute that regulates "a person [already] employed by the district or school under a probationary, continuing, or term contract." *See* Tex. Educ. Code Ann. § 21.058(c-1). In the same vein, because Plaintiff submitted his application to CISD directly, *see* Operative Compl. 3-4, and was not seeking employment with any "contracting or subcontracting entity," § 22.0834's prohibition on the employment of individuals with certain felony or misdemeanor convictions is likewise irrelevant to Plaintiff's Case. *See* Tex. Educ. Code Ann. § 22.0834(o). For these reasons, the Court lacks subject matter jurisdiction to entertain Plaintiff's challenges to §§ 21.058 and 22.0834, and his claims are therefore dismissed. *See Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154-55 (1979) ("A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights."); *see also, e.g.*, *O'Neill v. Louisiana*, 61 F. Supp. 2d 485, 491 (E.D. La. 1998) ("Since section 1116.1 cannot apply to O'Neill, he is unable to demonstrate the requisite injury to satisfy constitutional standing requirements."), *aff'd*, 197 F.3d 1169 (5th Cir. 1999); *see also M.J. Entm't Enters., Inc. v. City of Mount Vernon*, 234 F. Supp. 2d 306, 311–13 (S.D.N.Y. 2002) (holding that plaintiff lacked standing to bring a facial challenge to a zoning ordinance that did not apply to plaintiff's property).

### 3.    Plaintiff's challenge to the Texas barratry statute

In the Operative Complaint, Plaintiff seeks "a declaratory judgment declaring the barratry laws unconstitutional as a violation of the Equal Protection Clause" because "if a plumber or

airline can ask for business, so can an attorney for the laws to apply equally." *See* Operative Compl. 3.[9]  This contention is meritless:  Plaintiff cannot collaterally attack his state criminal convictions under the guise of a § 1983 employment discrimination suit.  *See Heck v. Humphrey*, 512 U.S. 477, 486 (1994) ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . ."); *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) ("If a judgment in the plaintiff's favor would necessarily imply that his conviction is invalid, then the § 1983 action is not cognizable unless the conviction were reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas.").  As a result, the Court dismisses this claim as well.

### 4.     Plaintiff's double jeopardy claim

Plaintiff next alleges that Defendants' policy against hiring convicted felons for classroom teaching positions constitutes double jeopardy under the Fifth Amendment.  *See* Operative Compl. 2, 6, 8.  The Double Jeopardy Clause, made applicable to the States through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794 (1969), states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The United States Supreme Court has interpreted this Clause to not only preclude successive prosecutions for the same offense, but also to prohibit "'punishing twice, or attempting a second time to punish criminally, for the same offense.'"  *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (quoting *Witte v. United States*, 515 U.S. 389, 396 (1995)).  Nevertheless, it

---

[9] In response to Defendants' Proposed Report of Parties' Planning Meeting, ECF No. 53-3, Plaintiff claimed that he was "no longer contest[ing] the barratry statute" in the instant Case.  *See* Pl.'s Statement Regarding Defs.' Proposed Report 3, ECF No. 67.  Nevertheless, Plaintiff failed to include this concession in any of his amended complaints.  Thus, the Court addresses Plaintiff's challenge to the Texas barratry statute here out of an abundance of caution.

has long been "recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (all internal quotation marks and citations omitted). Only punishment that is considered criminal "subject[s] the defendant to 'jeopardy' within the constitutional meaning." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943), *superseded by statute on other grounds as recognized by Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 293 (2010).

    While this Court is mindful of the serious and often harsh collateral consequences associated with criminal convictions, the "[i]mposition of both criminal and civil sanctions for the same acts or omissions does not violate the double jeopardy clause." *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1026 (5th Cir. 1984); *accord Hudson*, 522 U.S. at 99. Thus, the relevant question in this Case is whether CISD's refusal to hire Plaintiff as a classroom teacher constitutes a "criminal sanction" under the Fifth Amendment.

    The Court concludes that it does not. As the Fifth Circuit stated the last time Plaintiff challenged the constitutionality of a virtually identical policy, Defendants' hiring choices reflect "the legitimate interest of protecting children from both physical harm and corrupt influences." *Crook*, 277 F. App'x at 481. As a result, it lacks the punitive element that is necessary to trigger a double jeopardy violation. *See Hudson*, 522 U.S. at 99.

    Although the Court's research has not revealed a case directly on point, courts across the nation have consistently rejected attempts to equate the collateral consequences of criminal convictions with "additional punishment" under the Double Jeopardy Clause. *See Villa-Arreola v. Ashcroft*, 27 F. App'x 771, 772 (9th Cir. 2001) (deportation and removal of alien following felony conviction was not "criminal punishment" under the Fifth Amendment); *Turner v.*

16

*Glickman*, 207 F.3d 419, 427-31 (7th Cir. 2000) (statute denying certain federal welfare benefits to individuals with felony drug convictions did not constitute criminal punishment so as to violate the Double Jeopardy Clause); *Emory*, 748 F.2d at 1026 (administrative suspension of a medical license following felony conviction was not tantamount to double jeopardy); *Paine v. Bd. of Regents of Univ. of Texas Sys.*, 355 F. Supp. 199, 203 (W.D. Tex. 1972) (automatic suspension of student drug offenders was not a criminal sanction under the Double Jeopardy Clause), *aff'd*, 474 F.2d 1397 (5th Cir. 1973); *see also Brown v. Columbus Bd. of Educ.*, 638 F. Supp. 2d 856, 867 (S.D. Ohio 2009) ("[T]he double jeopardy clause [does not] apply to situations where a governmental entity, acting as an employer, imposes sanctions on an employee that a private employer could have taken." (citing *United States v. Payne*, 2 F.3d 706, 710-11 (6th Cir. 1993)).  Consistent with this case law and the underlying purposes of the Double Jeopardy Clause, the Court concludes that Plaintiff fails to state a plausible double jeopardy violation as a matter of law.

### 5.      Plaintiff's bill of attainder claim

The next constitutional provision that Plaintiff invokes is the Bill of Attainder Clause found in Article I, Section 10 of the Constitution.[10]  *See* Operative Compl. 2, 6, 8; U.S. Const. art. I, § 10 ("No State shall . . . pass any Bill of Attainder.").  The United States Supreme Court has defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977); *see also United States v. Lovett*, 328 U.S. 303, 315 (1946) ("[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them

---

[10] Article I, Section 9 of the Constitution contains a similar clause that applies to Congress.  *See* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed.").

without a judicial trial are bills of attainder prohibited by the Constitution."). The prohibition on these laws stems from "the ancient practice of the Parliament in England of punishing without trial 'specifically designated persons or groups.'" *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984) (quoting *United States v. Brown*, 381 U.S. 437, 447 (1965)). Thus, for a law to constitute a bill of attainder, it must: (1) identify a specific individual or group; (2) inflict punishment on that individual or group; and (3) do so without the benefit of a judicial trial. *See id.*

As is evident from the definition itself, Plaintiff's attempt to equate a school district's internal hiring policy with "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial," *Nixon*, 433 U.S. at 468, fails on its face. As one district court has observed, "actions brought under the Bill of Attainder Clause *challenge laws or amendments thereto* enacted by state legislatures." *Longmoor v. Nilsen*, 285 F. Supp. 2d 132, 141 (D. Conn. 2003) (emphasis added). Thus, no violation lies absent "conduct that could be characterized as a *legislative act* that retroactively determined [a small group of individuals] guilty of conduct necessitating legislatively imposed punishment." *Id.* (emphasis added).

While a school district's hiring policy may very well violate other constitutional provisions, absent a "legislative act" it cannot constitute a bill of attainder as a matter of law. *See Selective Serv. Sys.*, 468 U.S. at 851 ("The proscription against bills of attainder reaches only *statutes* that inflict punishment on the specified individual or group.") (emphasis added); *Nixon*, 433 U.S. at 468 (defining a bill of attainder as "a law"); *Brown*, 381 U.S. at 442 (characterizing the Bill of Attainder Clause as "a general safeguard against legislative exercise of the judicial function"); *Lovett*, 328 U.S. at 321-22 ("The distinguishing characteristic of a bill of attainder is

the substitution of legislative determination of guilt and legislative imposition of punishment for judicial finding and sentence."). Because Plaintiff's conclusory references to "bills of attainder" are not directed at any particular statute or other qualifying legislative act, *see* Operative Compl. 2, 6, 8, the Court dismisses this claim as well.

### 6.    Plaintiff's cruel and unusual punishment claim

Lastly, Plaintiff argues that CISD's policy perpetuates a system of "employment discrimination for life" and therefore constitutes cruel and unusual punishment under the Eighth Amendment. *See* Operative Compl. 2, 6, 8; U.S. Const. amend. VIII.   "Punishment rises to the level of cruel and unusual only if it involves an 'unnecessary and wanton infliction of pain.'" *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). For the same reasons the Court concluded that Defendants' refusal to hire Plaintiff as a classroom teacher does not constitute "punishment" under the Fifth Amendment's Double Jeopardy Clause, the Court holds that Plaintiff fails to state a claim for cruel and unusual punishment under the Eighth Amendment.

### C.    Plaintiff's State Law Claim For Promissory Estoppel

In addition to his Section 1983 claims, Plaintiff also brings a state law cause of action for promissory estoppel.[11] *See* Operative Compl. 5. Plaintiff contends that at some point during the application process, Galaviz promised Plaintiff that he would be hired as an economics teacher. *Id.* Plaintiff further alleges that, in reliance upon Galaviz's promise, he ceased interviewing with other school districts, which may have resulted in a loss of income. *Id.*

---

[11] The Court is aware that the general rule in this Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). However, this rule is neither mandatory nor absolute. *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002). Here, in the interests of judicial economy, efficiency, and fairness, the Court elects to exercise its supplemental jurisdiction over Plaintiff's promissory estoppel claim. *See, e.g.*, *Mendoza v. United States*, 481 F. Supp. 2d 643, 649 (W.D. Tex. 2006).

In response, CISD argues that the Court lacks subject matter jurisdiction over Plaintiff's state law claim because the Texas legislature has not waived its sovereign immunity for estoppel actions. *See* Mot. to Dismiss 14-15; Supplemental Mot. to Dismiss 4. Galaviz and the individual members of the Board also claim entitlement to immunity, contending that their hiring decisions are incident to or within the scope of their duties as CISD administrators, and thus not subject to liability under Texas law. *See* Galaviz's Mot. 7; Board's Mot. 9.

The Court first addresses Plaintiff's promissory estoppel claim against CISD. In Texas,[12] "[g]overnmental immunity protects political subdivisions of the State, including school districts, from lawsuits for damages." *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 420 (Tex. App. 2014); *accord Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 185 (Tex. App. 2012). "Governmental immunity, like the doctrine of sovereign immunity to which it is appurtenant, involves two issues: whether the State has consented to suit and whether the State has accepted liability." *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *accord Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).[13] "Immunity from suit is jurisdictional and bars suit; immunity from liability is not jurisdictional and protects from judgments." *Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 842. "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). "A plaintiff who sues the State must establish the State's consent to suit" otherwise "immunity from suit defeats a trial

---

[12] Federal courts apply state law when considering a pendent state law claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

[13] While sovereign immunity protects "the State, its agencies, and its officials," governmental immunity protects "political subdivisions of the State, including counties, cities, and school districts." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex.

court's subject-matter jurisdiction." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Here, Plaintiff has not affirmatively pleaded a waiver of immunity. *See generally* Operative Compl. In any event, this Court's research has revealed that there is no statute waiving Texas' immunity from suit for promissory estoppel claims. *See Gay v. City of Wichita Falls*, No. 08-13-00028-CV, 2014 WL 3939141, at *5 (Tex. App. Aug. 13, 2014) ("Because an implied contract is not a written contract, the City is immune from the promissory estoppel claim."); *City of Deer Park v. Ibarra*, No. 01-10-00490-CV, 2011 WL 3820798, at *6 (Tex. App. Aug. 25, 2011) ("Because a claim for promissory estoppel is not a claim on a written contract, immunity is not waived under section 271.152 for such a claim."); *Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App. Apr. 23, 2008) ("Casias' promissory estoppel and quantum meruit claims sound in equity and are simply not included in section 271.152's limited waiver of governmental immunity."); *Lamesa Indep. Sch. Dist. v. Booe*, 251 S.W.3d 831, 834 (Tex. App. 2008) ("[E]ven when an equitable remedy such as estoppel or quantum meruit is asserted, the doctrine of sovereign immunity from suit applies as long as monetary damages are sought."); *Georgetown Waterpark, Ltd. v. City of Georgetown*, No. 03-02-00266-CV, 2002 WL 31833727, at *3 (Tex. App. Dec. 19, 2002) ("Promissory estoppel is not among the claims for which the Tort Claims Act waives immunity."); *see also Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 648 (S.D. Tex. 2014) ("Texas courts have uniformly held that as a matter of law contract and quasi-contract claims such as promissory estoppel and quantum meruit are barred by sovereign immunity."). As a result, Plaintiff's promissory estoppel claim against CISD is dismissed.

2006). Despite the differences in terminology, the two doctrines afford the same degree of protection. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008).

For similar reasons, Plaintiff is also unable to maintain a promissory estoppel claim against Galaviz or the individual members of the Board.  Section 22.0511 of the Texas Education Code provides a school district's professional employees with immunity for certain acts:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ. Code Ann. § 22.0511(a).

Both Texas and federal courts have consistently held that employment-related decisions are the type of discretionary judgments that trigger an official's statutory immunity.  *See Robinson v. Brannon*, 313 S.W.3d 860, 866 (Tex. App. 2010) (human resources employee entitled to immunity in suit stemming from decision to place teacher on administrative leave); *Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954, 957-58 (Tex. App. 1991) (various school administrators entitled to immunity for decision not to rehire bus driver after he was accused of soliciting sex from student); *Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 656 (S.D. Tex. 1998) (principal entitled to immunity in suit stemming from negative teacher evaluation); *Rogan v. Lewis*, 975 F. Supp. 956, 961 (S.D. Tex. 1997) (superintendent entitled to immunity in suit stemming from a recommendation to the Board of Trustees to fire a particular teacher); *Jones v. Houston Indep. Sch. Dist.*, 805 F. Supp. 476, 479 (S.D. Tex. 1991) (various school administrators immune in wrongful discharge case "because employment decisions are within Defendants' scope of employment and employees are immune from liability if their actions involve either judgment or discretion"), *aff'd*, 979 F.2d 1004 (5th Cir. 1992).

Consistent with this case law, the Court finds that Galaviz and the individual members of the Board are immune from Plaintiff's promissory estoppel claim as a matter of law.

### D.      Plaintiff's Requests for Injunctive Relief

As noted above, Plaintiff requests a variety of injunctive and declaratory relief.  *See* Operative Compl. 8-9.  "Generally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims."  *La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012) (collecting numerous federal cases so holding); *accord Young v. Bank of Am., N.A.*, Civil Action No. 4:13-CV-2489, 2014 WL 4202491, at *11 (S.D. Tex. Aug. 19, 2014) ("The law is clear that injunctive relief is an equitable remedy, not a cause of action, and should be dismissed when no substantive legal claims are pled.").  Here, none of Plaintiff's federal or state claims survive Defendants' motions to dismiss.  Thus, in the absence of a cognizable cause of action, Plaintiff's request for equitable relief is denied.

### E.      Leave to Amend

When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the court should generally give the plaintiff an opportunity to amend the complaint.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 247-48 n.6 (5th Cir. 2000).  "The court may deny leave to amend, however, if the defects are incurable or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, No. 14-50788, 2015 WL 81995, at *5 (5th Cir. Jan. 7, 2015) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002; *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

Here, Plaintiff has already amended his complaint on six different occasions. Additionally, the Court finds that the defects in the Operative Complaint are incurable, and any

further amendments would be futile.  *See Pierce*, 2015 WL 81995, at *5.  Accordingly, the Court declines to grant Plaintiff a seventh opportunity to amend his Operative Complaint.

> **F.      Defendant's Request for Sanctions and Attorney's Fees**

In their Motion to Dismiss, Defendants ask the Court to issue various sanctions against Plaintiff under Federal Rule of Civil Procedure 11(b).  *See* Mot. to Dismiss 18-20.  Specifically, Defendants contend that Plaintiff filed successive lawsuits against area school districts for the sole purpose of obtaining a settlement fee, and that his constitutional arguments do not constitute a good faith attempt to extend, modify, or establish new law.  *Id.* at 19.  Defendants further contend that Plaintiff's failure to disclose the prior litigation in *Crook I* is also grounds for sanctions under Rule 11.  *Id.* at 19-20.

Plaintiff denies that he filed his petition for an improper purpose, and indicates that all of his arguments qualify as a good faith attempt to change or modify existing law.  *See* Resp. 17.

After due consideration, the Court declines to issue any sanctions or award Defendants reasonable attorney's fees.  However, the Court admonishes Plaintiff that if he files any other action advancing these same legal theories, sanctions may very well be appropriate.

## III.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 50, is hereby **GRANTED** in part and **DENIED** in part, as follows:

The Motion to Dismiss is **GRANTED** as it relates to each of Plaintiff's § 1983 claims as well as Plaintiff's requests for injunctive relief.  The Motion to Dismiss is **DENIED** as it relates to Defendants' request for sanctions.

The Court further **ORDERS** that the Supplemental Motion to Dismiss, ECF No. 77, is hereby **GRANTED** in its entirety.

The Court further **DENIES** all other pending motions as moot.

The Clerk shall close the Case.

**SO ORDERED.**

SIGNED this 5th day of February, 2015.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE